## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

DOYLE L. COOSENBERRY,

_____Plaintiff,

vs.                                                    CASE NO. CV-08-J-2270-NW

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

      Defendant.

### <u>MEMORANDUM OPINION</u>

This matter is before the court on the record and the briefs of the parties.  This court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff seeks Disability Insurance Benefits and Supplemental Security Income due to heart problems, diabetes, high blood pressure, high cholesterol, and arthritis (R. 120).  The plaintiff's alleged disability onset date is June 20, 2002 (R. 120).

On appeal the plaintiff argues that the decision of the Administrative Law Judge (ALJ) that the plaintiff did not meet the requirements of listing 12.05(C), 20 C.F.R. § 404, Subpt. P, App. 1, is against the substantial weight of the evidence. Plaintiff's Brief at 10.

The court has considered the record and the briefs of the parties.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED**.

### Procedural History

On August 14, 2004, the ALJ issued a partially favorable decision, finding that the plaintiff was under a disability from June 20, 2002, to January 1, 2004, but not thereafter (R. 48-54).  The plaintiff requested review of the ALJ's decision, and on April 18, 2007, the Appeals Council vacated the ALJ's decision and remanded for further proceedings (R. 108-09).  On May 19, 2008, the ALJ again issued a partially favorable decision, finding that the plaintiff became disabled on June 1, 2007, but was not disabled prior to such date (R. 16-27).  The Appeals Council denied the plaintiff's request for review (R. 6-8).

## Factual Background

The plaintiff was born on December 30, 1952 (R. 81).  He attended school through the sixth grade (R. 82).  The plaintiff has past relevant work as a fence erector, a heavy exertional, semiskilled job with an SVP of 5 (R. 97).  The plaintiff performed this job for approximately 30 years (R. 84).

Medical records indicate an extensive history of heart problems.  On June 14, 2002, Dr. Randall E. Little examined the plaintiff, noting that he was admitted to the emergency room the preceding week due to chest pain (R. 207).  Dr. Ronald T. Y. Moon, Jr. performed a functional capacity evaluation on the plaintiff on July 29, 2002, where the plaintiff reported a past medical history of diabetes, heart disease, and high blood pressure (R. 222).  Dr. Moon stated that the plaintiff injured his lower back at work in April 2002, and he was diagnosed with lumbar strain in June 2002.

*Id.*  Diagnoses included chronic/recurrent low back (right L4-5/L5-S1) pain, somatic dysfunction of the right OA, cervical left C4-5, thoracic right T4-6, ribs right 4-6, lumbar right L3-5, and right anterior innominate rotation, as well as degenerative disc disease, among others (R. 228-29).  Dr. Moon also noted other multiple medical issues such as diabetes, a heart attack, and a heart stint in 1998 with angioplasty X 2 (R. 229).  In June 2004 the plaintiff visited Dr. S.D. Steele for a consultative physical examination (R. 419).  Dr. Steele stated that the plaintiff's past history included coronary artery disease, chronic bronchitis, hypertension, and ulcer disease. *Id.*  The plaintiff alleged ongoing chest tightness after walking approximately 300 feet, chronic breathlessness, indigestion, dizziness, and ongoing weakness. *Id.*  Dr. Steele's assessment provided that the plaintiff's functional impairment is moderate in regards to his chronic back pain but more severely limited by potential worsening of coronary artery disease (R. 420).  Dr. Steele stated that the plaintiff was unsuited to return to his previous work. *Id.*

On September 19, 2004, the plaintiff was seen by Dr. James E. Crowder for a consultative psychological examination (R. 440).  Dr. Crowder indicated that the plaintiff feels depressed, has crying spells, and becomes irritable easily (R. 441).  However, he has never been treated for any mental disorder. *Id.*  On the Wide Range Achievement Test 3, the plaintiff's reading score was on the first grade level, and his arithmetic score was on the third grade level (R. 442).  Dr. Crowder stated that the

plaintiff was functioning in the marginal range, and he is functionally illiterate.  *Id.*
Dr. Crowder also indicated that the plaintiff performed poorly on the WAIS-III.  *Id.*
The plaintiff's Verbal IQ was 66, his Performance IQ was 63, and his Full Scale IQ
was 62.  *Id.*  Such IQ scores are within the mild mental retardation range and at the
1st percentile rank.  *Id.*  The plaintiff's GAF score was 55-60 (R. 443).  Dr. Crowder's
diagnoses included: history of alcohol abuse, adjustment disorder with depressed
mood; mild mental retardation; heart disease, high blood pressure, type 2 diabetes,
chronic back pain, high cholesterol, poor circulation in the bilateral lower extremities;
and moderately severe-financial, his health, wife's health, deaths in the family (R.
442).  Dr. Crowder concluded that the plaintiff is mildly mentally retarded and
functionally illiterate (R. 443).  Due to the plaintiff's work history, test results, and
limitations, Dr. Crowder stated that he was not aware of any work that the plaintiff
could perform on a regular basis.  *Id.*

On August 4, 2007, Dr. Alwyn S. Whitehead performed a psychological
evaluation on the plaintiff (R. 613).  The plaintiff's Verbal IQ was 70 (Borderline),
his Performance IQ was 65 (Extremely Low), and his Full Scale IQ was 65
(Extremely Low) (R. 617).  Dr. Whitehead stated that the plaintiff's WAIS-III scores
demonstrate cognitive ability in the Extremely Low range of intellectual functioning.
*Id.*  The plaintiff's overall reasoning abilities exceed those of 1% of adults the same
age.  *Id.*  The plaintiff's results from the Wide Range Achievement Test show a third

grade reading level, a first grade spelling level, and a kindergarten arithmetic level. *Id.* Dr. Whitehead's diagnoses included: bereavement, major depressive disorder, chronic, mild, panic disorder, without agoraphobia, nicotine dependence; mild mental retardation; hypercholesteremia, hypertension, arthritis, diabetes; and educational problems, occupational problems, economic problems (R. 617-18). The plaintiff's GAF score was 60-65 (R. 618). Dr. Whitehead concluded that the plaintiff appeared to have a lifelong history of mental retardation or mental slowness, and he is performing at the Extremely Low range of intellectual functioning. *Id.* However, Dr. Whitehead also stated that the plaintiff is able to understand and remember simple instructions during a normal workday, he can concentrate and persist on simple tasks during a normal workday, he has the capacity to interact in moderate contact situations involving the general public, and he has the ability to adapt to a simple work environment, but his ability to interact with coworkers and/or supervisors is moderately impaired. *Id.* Dr. Whitehead stated that it would be reasonable to expect improvement in the plaintiff's psychological impairment if appropriate treatment is followed. *Id.*

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for 'despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of [the] decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## Legal Analysis

In this case the ALJ applied Rule 202.02 of the Medical-Vocational Guidelines of Appendix 2 to reach a conclusion of disabled for the period after June 1, 2007 (R. 26). For the period before June 1, 2007, the ALJ ruled that the plaintiff was not disabled, relying on the testimony of the vocational expert who stated that there were a significant number of jobs in the national economy that the plaintiff could perform, given his limitations (R. 25-26). Further, the ALJ found that the plaintiff's impairments did not meet or equal the requirements of listing 12.05(C), 20 C.F.R. § 404, Subpt. P, App. 1, which addresses mental retardation (R. 22-23).

The record does not support this decision. The court finds that the ALJ did not

properly consider the plaintiff's claim under the Listing of Impairments.  20 C.F.R.

§ 404, Subpt. P, App. 1, 12.05(C).  The Commissioner's "failure to apply the correct

law or to provide the reviewing court with sufficient reasoning for determining that

the proper legal analysis has been conducted mandates reversal."  *Cornelius v.*

*Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

The ALJ stated that although the IQ scores reported in Dr. Crowder's

evaluation are valid, the plaintiff did not meet the criteria of listing 12.05(C) since

there was no showing that the plaintiff had any adaptive deficits prior to age 22 (R.

23).  The ALJ found that the plaintiff's work history in an SVP5 job, his marriage,

and the fact that he bought a car do not support a ruling that the plaintiff's low level

of intellectual functioning existed throughout his life.  *Id.*  This conclusion is in error

as the plaintiff's medical records provide otherwise.  Listing 12.05(C) states as

follows:

> 12.05 *Mental Retardation:* Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; *i.e.*,
> the evidence demonstrates or supports onset of the impairment before
> age 22.
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.

> * * * *

> C.    A valid verbal, performance, or full scale IQ of 60 through 70 and
>        a physical or other mental impairment imposing an additional and
>        significant work-related limitation of function;

* * * *

20 C.F.R. § 404, Subpt. P, App. 1.  The plaintiff satisfies both criteria of this listing.

First, in *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001), the Eleventh

Circuit held that if a claimant establishes a valid IQ score between 60 and 70, then

there is a presumption that he manifested deficits in adaptive functioning before age

22.  In September 2004 the plaintiff's Verbal IQ was 66, his Performance IQ was 63,

and his Full Scale IQ was 62 (R. 442).  Additionally, the plaintiff's Verbal IQ was 70,

his Performance IQ was 65, and his Full Scale IQ was 65 when he was evaluated by

Dr. Whitehead in August 2007 (R. 617).  These scores establish a presumption that

the plaintiff had deficits in adaptive functioning before age 22.

The Commissioner may present evidence of the plaintiff's daily life to rebut the

presumption of mental impairment.  *Hodges*, 276 F.3d at 1269.  The Commissioner

argues that the ALJ properly rebutted the presumption by considering the plaintiff's

daily activities, such as his job as a fence builder.  Commissioner's Brief at 8-9.  This

court disagrees.  The plaintiff's fence building job was not overly complicated.  The

vocational expert testified that the plaintiff's job "is a physical job and does not

require a lot of academic ability beyond measuring and routine mathematical

calculation" (R. 98).  In addition to the plaintiff's low IQ scores, Dr. Whitehead stated

that the plaintiff appeared to have a lifelong history of mental retardation or mental

slowness, and he is performing at the Extremely Low range of intellectual functioning

(R. 618).  Dr. Crowder also opined that the plaintiff is functionally illiterate (R. 442).

The plaintiff satisfies the conditions of paragraph C due to his previously discussed IQ scores coupled with his extensive physical impairments.  The ALJ found that the plaintiff's severe impairments included: cardiac disease, diabetes, hypertension, high cholesterol, arthritis, and mild mental retardation (R. 19).  Further, the medical evidence regarding the plaintiff's chronic back problems and heart disease support a finding that the plaintiff's physical impairments constitute "additional and significant work-related limitation[s] of function."  12.05(C), 20 C.F.R. § 404, Subpt. P, App. 1.

Based on the applicable law and the plaintiff's medical records, the ALJ should have found that the plaintiff was disabled prior to June 1, 2007, since his impairments satisfy the criteria of listing 12.05(C), 20 C.F.R. § 404, Subpt. P, App. 1.  The ALJ's finding that the plaintiff was not disabled prior to June 1, 2007, is against the substantial weight of the evidence.  The court finds that because the plaintiff is disabled pursuant to listing 12.05(C), he is entitled to additional benefits from his alleged onset date, June 20, 2002 until June 1, 2007, the date for which the ALJ found the plaintiff disabled.

## Conclusion

"When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Secretary should

have made." *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D. Fla. 1984) (citing *Gardner v. Smith*, 368 F.2d 77, 86 (5th Cir. 1966); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972)).  Because the plaintiff is entitled to a finding of disability under listing 12.05(C), it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED**.  This case is **REMANDED** to the Agency to calculate the plaintiff's additional monetary benefits from June 20, 2002, until June 1, 2007.

**DONE** and **ORDERED** the 29th day of July 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE